IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs May 6, 2008

## MATTHEW DIXON v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Shelby County**
**No. 28655      W. Fred Axley, Judge**

_____

**No. W2007-01091-CCA-R3-PC  - Filed July 8, 2008**

_____

The Petitioner, Matthew Dixon, appeals from the post-conviction court's order denying his petition for post-conviction relief. On appeal, he argues that the denial of relief was error because he did not receive the effective assistance of counsel at trial. Following our review, we conclude that the Petitioner has not shown that trial counsel was ineffective. Consequently, we affirm the post-conviction court's order denying post-conviction relief.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

DAVID H. WELLES, J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR., J., and DAVID G. HAYES, SR. J., joined.

Britton J. Allan, Memphis, Tennessee, for the appellant, Matthew Dixon.

Robert E. Cooper, Jr., Attorney General and Reporter; Sophia S. Lee, Assistant Attorney General; William L. Gibbons, District Attorney General; and Tom Hoover, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**Factual Background**

Following a jury trial, the Petitioner was convicted of premeditated first degree murder and two counts of especially aggravated kidnapping. See State v. Mickens, 123 S.W.3d 355, 361 (Tenn. Crim. App. 2003), perm. to appeal denied, (Tenn. 2003) (consolidated appeal of the Petitioner and his co-defendants, Corey Mickens, Christopher Smith, and Choncey Jones). He was sentenced to life without the possibility of parole for the murder and to two consecutive thirty-two-year, six-month sentences for the especially aggravated kidnappings. Id.

On direct appeal, this Court set out the factual circumstances surrounding the Petitioner's crimes. See id. at 362–68. He was a member of the Memphis chapter of the "Gangster Disciples,"

a national gang of criminals headquartered in Chicago. See id. at 363. Part of the gang's organization was the existence of set punishments[1] administered to gang members who violated gang rules. See id. at 363–64. The victims in this case, Marshall Shipp and Ricky Aldridge, were gang members who were punished for violating gang rules. See id. at 364. Shipp broke a rule by being insubordinate to a superior, and Aldridge committed a violation by "firing on" other gang members. See id.

An eyewitness testified that the gang's high-ranking members in Memphis ordered that the victims be punished for their rule violations. See id. Victim Aldridge testified that the Petitioner was present and participated in "arresting" the victims and administering their punishments. See id. at 366. According to Aldridge, the Petitioner, along with several other gangsters, forced the victims into their cars at gunpoint, transported them to a secluded park in South Memphis, and then beat Shipp severely by striking him repeatedly for several minutes with baseball bats and a tire iron before shooting him in the buttocks with a pistol. See id. at 366–67. Aldridge was also beaten by the mob for approximately six minutes, but no weapons were used to beat him. Id. at 367. Shipp was left for dead, and Aldridge was eventually allowed to leave. See id. Aldridge returned to the park later and took Shipp to a hospital where he died two days later. Id. The Petitioner did not testify at his trial. See id. at 362–68.

This Court affirmed the Petitioner's convictions on direct appeal, and our supreme court denied his application for permission to appeal. Id. at 355. He filed a timely, pro se petition for post-conviction relief, and counsel was appointed to represent him in his post-conviction action. An amended petition was filed, and the post-conviction court held an evidentiary hearing during which the Petitioner and the attorney who represented him at trial (trial counsel) were the only witnesses.

The Petitioner testified that trial counsel represented him at his preliminary hearing, at trial, and on appeal. According to the Petitioner, approximately two years passed between the time he was indicted and his trial, and over that time, trial counsel only met with him "about four or five times." Their meetings lasted approximately fifteen minutes each. During their meetings, trial counsel would only tell him about various motions he intended to file, but he did not explain any of the motions to the Petitioner.

The Petitioner also testified that prior to his trial, trial counsel did not discuss the State's case with him, nor did trial counsel provide him with any discovery materials until after the trial. The Petitioner asserted that he had given trial counsel the names of three witnesses he wanted to call (his brothers and sisters), but they did not testify. Also, an investigator was appointed to his case, and the investigator met with the Petitioner twice before trial, but trial counsel was not present at those meetings. Further, the Petitioner claimed that trial counsel did not discuss the facts of his case, the consequences of conviction, or any defense strategy with him prior to trial.

---

[1] The punishments included three and six minute beatings, as well as death. See id.

Trial counsel testified that he had been appointed to represent the Petitioner and that he "probably" met with him for the first time before the preliminary hearing. Trial counsel could not remember the specific details of his visits with the Petitioner because approximately nine years had passed since the Petitioner's trial. Trial counsel stated that he "would have" met with the Petitioner again after the preliminary hearing and, at that time, he would have gone over the packet of discovery materials provided to the Petitioner and his co-defendants. He also "would have discussed the case in light of [the] preliminary hearing testimony." Trial counsel explained that he met with the Petitioner "regularly" before his trial to discuss their defense strategy.

Trial counsel further explained that the Petitioner was tried with three co-defendants: Mickens, Smith, and Jones. However, these were not the only defendants indicted for the crimes perpetrated against victims Shipp and Aldridge; another group of defendants had been tried for the crimes prior to the Petitioner's trial, and trial counsel testified that there were "significant benefits" gained from being able to observe the State's case in the previous trial. Trial counsel shared an office with an attorney who represented one of the defendants in the first trial. Thus, he had ready access to the testimony of all the State's witnesses who testified at that trial, and trial counsel was able to "utilize the fruits of his [partner's] investigation," in addition to what he learned by conducting his own investigation. According to trial counsel, he had "a substantial amount of information" amassed to prepare the Petitioner's defense, including the transcripts from the previous trial as well as the discovery provided by the State in that trial. Trial counsel testified that he discussed all of this information with the Petitioner.

Asked how thoroughly he would have discussed this information with the Petitioner, trial counsel responded as follows:

> Well, I would have—the way I would have conducted, and I don't recall specifically, but the way I would have conducted it is we would have met in jail and I would [have] advised him that I had the testimony and this is what these people are going to testify to. And, I would have asked him, you know, from his perspective, you know, first you know, what is your position on this testimony. If they said he was there, you know, what is his position, was he not there or where was he? Is this incorrect? Is it inaccurate? If he had no answer or he had no position, then I would have advised him what my plan was. You know, I would have either brought up another witness's testimony or I would have brought up where the particular individual we were talking about the time conflicted with perhaps another witness's testimony and how the plan was to cross-examine that witness.

According to trial counsel, the Petitioner asserted that, when the victims were taken inside the park to be "punished," he stayed at the cars as a "lookout," so he was not actually present when the crimes took place. The Petitioner's position was contrary to the testimony presented at the preliminary hearing. Trial counsel explained this to the Petitioner, and trial counsel explained to him the concept of criminal responsibility for the acts of others.

Regarding the Petitioner's decision not to testify at his trial, trial counsel testified that he discussed the issue with the Petitioner, but he did not remember the details of their conversation. He said that he "probably would have advised him not to testify" because he "would not have thought that there was anything that could have been gleaned from his testimony." Trial counsel explained that his best defense was going to be pointing out inconsistencies in the testimony presented by the State's witnesses, and in impeaching any witnesses that testified to the Petitioner's presence during the perpetration of the crime. It was the Petitioner's decision not to testify at trial.

Regarding impeachment of the State's witnesses, trial counsel testified that he did in fact impeach some of the State's witnesses. However, some of the State's witnesses never mentioned the Petitioner's name; those witnesses "never placed [the Petitioner] at any of these [gang] meetings or said he had any involvement." Consequently, trial counsel made the decision during trial not to cross-examine any of the witnesses who did not testify to the Petitioner's involvement. Trial counsel said that he discussed this strategy with the Petitioner and explained to him that if a witness did not mention him, he was not going to cross-examine them because he did not want "to do anything to draw attention to him and have [the witnesses] recall his presence." If a witness did specifically testify that the Petitioner had been present during the perpetration of the crimes, trial counsel impeached them with "either their inconsistent prior statements or whatever [he] had to impeach them with."

In preparation for the Petitioner's trial, trial counsel also went to the crime scene. Further, he hired an investigator to help him prepare. On cross-examination, trial counsel confirmed that victim Aldridge was the only witness who specifically testified to the Petitioner's presence at the scene of the crime. Trial counsel explained that Aldridge would not cooperate with defense lawyers or investigators before the trial, so he prepared to cross-examine him by relying on the "lengthy" testimony Aldridge gave at the first trial and at the Petitioner's preliminary hearing. Also, trial counsel "felt certain" that he "probably had a background file" on Aldridge that would have detailed any criminal history he had. Specifically, trial counsel's plan was to "convince the jury that [Aldridge] was not telling the truth" and also to show that he was an accomplice to some extent and a member of the gang. He hoped that by pointing out inconsistencies from Aldridge's previous testimony, he could give rise to reasonable doubt in the minds of the jurors as to the Petitioner's guilt.

Subsequent to the hearing, the post-conviction court denied relief by entering a detailed written order of dismissal addressing each argument put forward by the Petitioner in his petition.[2] It is from the order denying relief that the Petitioner appeals.

## ANALYSIS

On appeal, the Petitioner asserts that the post-conviction court erred by denying relief. Specifically, he claims that trial counsel was constitutionally ineffective because he failed to investigate "the facts" prior to trial, he failed to properly cross-examine witnesses at trial, and

---

[2] Relevant portions of the post-conviction court's order are set out in the analysis below.

because he did not adequately consult with him prior to trial. Further, the Petitioner asserts that a new trial is warranted because of cumulative error.

The Sixth Amendment to the United States Constitution and article I, section 9 of the Tennessee Constitution guarantee a criminal defendant the right to representation by counsel. State v. Burns, 6 S.W.3d 453, 461 (Tenn. 1999); Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975). Both the United States Supreme Court and the Tennessee Supreme Court have recognized that the right to such representation includes the right to "reasonably effective" assistance, that is, within the range of competence demanded of attorneys in criminal cases. Strickland v. Washington, 466 U.S. 668, 687 (1984); Burns, 6 S.W.3d at 461; Baxter, 523 S.W.2d at 936.

A lawyer's assistance to his or her client is ineffective if the lawyer's conduct "so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." Strickland, 466 U.S. at 686. This overall standard is comprised of two components: deficient performance by the defendant's lawyer and actual prejudice to the defense caused by the deficient performance. Id. at 687; Burns, 6 S.W.3d at 461. The defendant bears the burden of establishing both of these components by clear and convincing evidence. Tenn. Code Ann. § 40-30-110(f); Burns, 6 S.W.3d at 461. The defendant's failure to prove either deficiency or prejudice is a sufficient basis upon which to deny relief on an ineffective assistance of counsel claim. Burns, 6 S.W.3d at 461; Goad v. State, 938 S.W.2d 363, 370 (Tenn. 1996).

In evaluating a lawyer's performance, the reviewing court uses an objective standard of "reasonableness." Strickland, 466 U.S. at 688; Burns, 6 S.W.3d at 462. The reviewing court must be highly deferential to counsel's choices "and should indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Burns, 6 S.W.3d at 462; see also Strickland, 466 U.S. at 689. The court should not use the benefit of hindsight to second-guess trial strategy or to criticize counsel's tactics, see Hellard v. State, 629 S.W.2d 4, 9 (Tenn. 1982), and counsel's alleged errors should be judged in light of all the facts and circumstances as of the time they were made, see Strickland, 466 U.S. at 690; Hicks v. State, 983 S.W.2d 240, 246 (Tenn. Crim. App. 1998).

A trial court's determination of an ineffective assistance of counsel claim presents a mixed question of law and fact on appeal. Fields v. State, 40 S.W.3d 450, 458 (Tenn. 2001). This Court reviews the trial court's findings of fact with regard to the effectiveness of counsel under a de novo standard, accompanied with a presumption that those findings are correct unless the preponderance of the evidence is otherwise. Id. "However, a trial court's conclusions of law—such as whether counsel's performance was deficient or whether that deficiency was prejudicial—are reviewed under a purely de novo standard, with no presumption of correctness given to the trial court's conclusions." Id. (emphasis in original).

In this case, the Petitioner first asserts that trial counsel was ineffective because he did not interview "key witnesses" prior to trial. The post-conviction court addressed this argument in its detailed order denying post-conviction relief, finding as follows:

[Trial counsel] testified that he had the testimony of witnesses from the previous trial and the preliminary hearing, in addition to interviews provided by the other defense counsel's investigators and reports made by his own investigators. Counsel testified that he interviewed witnesses that would speak to him and "he had a file on every witness who took the stand, either with a prior statement or prior testimony." Petitioner's claim is therefore without merit.

The record supports the post-conviction court's findings. Moreover, the Petitioner has made no argument regarding how further pre-trial interviews with the State's witnesses would have affected the outcome of his trial. Consequently, he has failed to demonstrate how he was prejudiced by any alleged deficiency in this regard, and therefore the Petitioner's claim that trial counsel was ineffective for failing to interview witnesses is without merit. See Tenn. Code Ann. § 40-30-110(f); Burns, 6 S.W.3d at 461.

Secondly, the Petitioner asserts that trial counsel was ineffective for failing to "adequately cross-examine the State's witnesses during trial." More specifically, the Petitioner broadly asserts that trial counsel knew only one of the State's witnesses (Aldridge) would testify to his presence at the scene of the crime and that trial counsel did not properly impeach him. The post-conviction court also addressed this argument in its written order denying relief:

[Trial counsel's] strategy to impeach only witnesses that placed Petitioner on the scene using their prior conflicting statements was reasonable under the circumstances and rises to the "range of competence demanded of an attorney in a criminal case." Baxter, [523 S.W.2d] at 936. Further, Petitioner has offered no evidence showing that failing to impeach a witness prejudiced his trial. Strickland, [466 U.S.] at 695. [T]his court will not second guess counsel's reasonable tactical decision to avoid cross-examining witnesses that did not mention Petitioner. (emphasis added).

We agree with the post-conviction court: no showing of prejudice has been made, and this issue has no merit. See Tenn. Code Ann. § 40-30-110(f); Burns, 6 S.W.3d at 461.

Thirdly, the Petitioner asserts that trial counsel was ineffective because he "failed to properly consult with [the Petitioner] prior to trial." In support of this contention, the Petitioner relies on his testimony presented at the post-conviction hearing, asserting that it established "a complete lack of communication between [the Petitioner] and trial counsel." However, trial counsel testified that he met with the Petitioner "regularly." Trial counsel also explained that he went over the testimony of the State's witnesses and his defense strategy with the Petitioner. The post-conviction court accredited the testimony of trial counsel by finding that "[t]here is nothing in the record or in Petitioner's testimony that would substantiate Petitioner's contention that the lack of [a greater] number of meetings with Petitioner directly and adversely affected the outcome of his trial." The record supports the finding of the post-conviction court. Again, the Petitioner has not demonstrated how he was prejudiced by the allegedly deficient pre-trial consultations with trial counsel.

Accordingly, this issue also has no merit.  <u>See</u>  Tenn. Code Ann. § 40-30-110(f); <u>Burns</u>, 6 S.W.3d at 461.

Lastly, the Petitioner argues that the cumulative effect of the errors made by the post-conviction court resulted in prejudicial error, warranting a new trial.  However, because we have found no error in the proceedings below, the Petitioner is not entitled to relief on the basis of cumulative error.  We conclude that the Petitioner established neither deficient representation by counsel nor prejudice from the shortcomings which he alleged.

**Conclusion**

Based on the foregoing authorities and reasoning, we affirm the post-conviction court's order of dismissal.

_____
DAVID H. WELLES, JUDGE